COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia


OAK VALLEY HOMEOWNERS
  ASSOCIATION, INC., ET AL.

                                                                    OPINION BY
v.      Record No. 1144-24-4                           JUDGE STUART A. RAPHAEL
                                                                    JULY 22, 2025
PRINCE WILLIAM COUNTY
  BOARD OF SUPERVISORS


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Craig J. Blakeley (Alliance Law Group LLC, on briefs), for
appellants.

Alan F. Smith, Chief Deputy Attorney (Michelle R. Robl, County
Attorney; Curt G. Spear, Jr., Deputy County Attorney, on briefs), for
appellee.

Amicus Curiae: GW Acquisition Co., LLC, GW Acquisition Co. I,
LLC, and H&H Capital Acquisitions, LLC (Michael E. Tucci;
Matthew A. Westover; Mark C. Looney; Stinson LLP; Walsh,
Colucci, Lubeley & Walsh, P.C.; Cooley LLP, on brief), for
appellee.


Oak Valley Homeowners Association, Inc. and several landowners (collectively, the

"landowners") sought a declaratory judgment to invalidate an amendment to the comprehensive

plan adopted by the Prince William County Board of Supervisors. The landowners claimed that

the Board violated Code §§ 15.2-2204 and -2229 by failing to "listen to and consider" public

comments received at the marathon, all-night public hearing that immediately preceded the vote

to adopt the amendment. The circuit court sustained the Board's demurrer. The court found

that, although the landowners alleged sufficient facts to establish standing, they failed to state a

claim for any statutory violation. Finding no error in either ruling, we affirm.

BACKGROUND

When reviewing a judgment sustaining a demurrer, "we 'accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff.'" *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "[W]e draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.* "But we are not bound by the pleader's conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023).

In 1998, the Board designated a "Rural Crescent" area in Prince William County that consisted of 117,000 acres. Permitted uses included agricultural, open space, forestry, large-lot residential, small-scale retail centers, and community facilities. In 2016, the Board amended its zoning ordinance to allow the construction of data centers in "Data Center Opportunity Zone Overlay Districts." The Board established one such overlay district in the Rural Crescent.

On July 7, 2022, the Planning Commission released a first public draft of a "Digital Gateway" amendment to the comprehensive plan. The Planning Commission held a public hearing on the amendment that began on September 14 and that continued into the next day. By that date, two developers had already purchased a sizable amount of land within the Rural Crescent with plans to build data centers. The developers sent the Planning Commission a letter with their proposed changes to the amendment, stating that they were delaying the processing of three rezoning applications in anticipation of the amendment's passage. The public was not told about the letter until just before the Planning Commission's vote. The Planning Commission recommended that the Board approve the amendment with the changes the developers had suggested.

The Board scheduled a public hearing on the amendment for November 1, 2022, and it published notice of the public hearing on October 18 and October 25, in accordance with the requirements set forth in Code § 15.2-2204.[1] The public hearing began as scheduled at 7:30 p.m. on November 1. It continued for more than 14 hours, concluding on November 2 at just before 10:00 a.m. Nearly 240 people presented comment. When the public-comment session ended, the Board chair refused to let one supervisor question staff about the public comments. Another supervisor then introduced a resolution, prepared in advance of the public hearing, to adopt the amendment as proposed. The resolution passed by a vote of 5-2.

Oak Valley and ten individual landowners sued to invalidate the amendment. The circuit court sustained the Board's demurrers to the original complaint and to an amended complaint. The landowners filed a second amended complaint, the operative one here. They sought a declaratory judgment that the Board violated the public-hearing requirements in Code §§ 15.2-2204 and -2229 because it did not "listen to and consider the comments made at the public hearing" before adopting the amendment. That failure, claimed the landowners, rendered the amendment void ab initio. They theorized that because the Board adopted a pre-drafted amendment right after the all-night hearing, the sleep-deprived supervisors could not have seriously considered the public comments. The landowners claimed that the public hearing was thereby rendered a nullity, a procedural "'check the box' exercise."[2]

The Board demurred to the second amended complaint. It argued that the landowners lacked standing, that declaratory relief was not available, and that the complaint failed to state a claim for any statutory violation. The circuit court sustained the demurrer and dismissed the

---

[1] The requirements in Code § 15.2-2204(A) to advertise a public hearing have since been amended. *See* note 4 *infra*.

[2] The landowners withdrew count two of the second amended complaint at the demurrer hearing.

second amended complaint with prejudice.  The court found that the landowners had standing but failed to state a claim for any violation of Code §§ 15.2-2204 or -2229.  The court concluded that the landowners' "listen to and consider" theory would require the court to read additional words into the statute.  The landowners noted a timely appeal.

ANALYSIS

We review de novo the circuit court's decision to sustain the Board's demurrer. *Glazebrook v. Bd. of Supervisors*, 266 Va. 550, 554 (2003).

A.  *The landowners sufficiently alleged standing.*

"[T]he standing doctrine asks only whether the claimant truly has 'a personal stake in the outcome of the controversy.'"  *Morgan v. Bd. of Supervisors*, 302 Va. 46, 59 (2023) ("*Morgan I* ") (quoting *McClary v. Jenkins*, 299 Va. 216, 221-22 (2020)).  "We review de novo the question of whether . . . factual allegations were sufficient to establish standing."  *Anders Larsen Tr. v. Bd. of Supervisors*, 301 Va. 116, 122 (2022) (quoting *Platt v. Griffith*, 299 Va. 690, 692 (2021)).

A two-part test determines whether nearby landowners have standing to challenge a local governing body's land-use decision:

> First, the complainant must own or occupy real property within or in close proximity to the property that is the subject of the land use determination, thus establishing that it has a direct, immediate, pecuniary, and substantial interest in the decision.
>
> Second, the complainant must allege facts demonstrating a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Morgan I*, 302 Va. at 59 (quoting *Anders Larsen*, 301 Va. at 121).  The harm must "be fairly traceable to the challenged action," although the action need not be "the very last step in the chain of causation."  *Id.* at 64-65 (quoting *Mattaponi Indian Tribe v. Va. Dep't of Env't Quality ex rel. State Water Control Bd.*, 261 Va. 366, 376 (2001)).  Allegations "must be something more

than an ingenious academic exercise in the conceivable." *Id.* at 61 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).

The amended complaint here alleged facts sufficient to satisfy the proximity prong. In *Morgan I*, the Court found sufficient proximity not only for landowners who lived "directly across the street from the proposed development site" but also for those who lived "1,200 feet" away. *Id.* at 52. The Court has also found "sufficiently close proximity" for plaintiffs who lived up to "2,000 feet" away from the land in controversy. *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 422, 427 (2000). In this case, five of the landowners own and reside on parcels that "abut[]" land where the comprehensive-plan amendment allows data centers (the "subject area"). Five others own properties less than 2,000 feet away from the subject area, at distances of 986, 1,370, 1,482, 1,650, and 1,820 feet, respectively. Oak Valley's parcel is 1,370 feet away. And although it is uncertain precisely where in the subject area any eventual data center might be sited, the proximity analysis is concerned only with "proximity to the property that is the subject of the land use determination." *Morgan I*, 302 Va. at 59 (quoting *Anders Larsen*, 301 Va. at 121). Because at least 10 of the 11 plaintiffs own property next to or near the subject area, they meet the proximity requirement.[3]

Those ten landowners also satisfied the second prong by alleging facts sufficient to show "a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation . . . different from that suffered by the public generally." *Id.* (quoting *Anders Larsen*, 301 Va. at 121). In particular, the second amended complaint plausibly alleged that the comprehensive-plan amendment had already reduced their property values. It said that

---

[3] Christopher Wall, who owns and resides on property 2,315 feet from the subject area, is the only plaintiff who lives more than 2,000 feet away. We need not decide if that is too far to satisfy the proximity prong, for when "one complainant demonstrates standing for the relief requested, a court need not determine whether the other complainants have standing." *Zinner v. Washington Gas Light Co.*, ___ Va. App. ___, ___ (July 1, 2025).

the then-pending developer applications alone would result in "approximately 33" data centers in the subject area. A typical data center is "industrial in appearance" and as tall as "a 10-story high-rise office building." The "light emanating at night from the security lighting of the 24/7 data centers in this semi-rural/agricultural area will be particularly visible to Plaintiffs." The landowners also cited "quantitative analysis and modeling" that data centers will "increase the noise Plaintiffs currently experience to over 75 decibels," making it "similar to the constant noise experienced while standing 50 feet from Interstate-66 (a heavily traveled highway)."

After explaining those background facts, the second amended complaint referenced real estate agents who "are experiencing buyer resistance when considering listings of homes, like those of Plaintiffs, located in close proximity to the proposed data centers." The pleading also alleged that Oak Valley had already experienced two instances in which "a potential buyer chose another community . . . over Oak Valley because of the proximity of Oak Valley" to the subject area.

The landowners also plausibly asserted that "any reasonable purchaser of real estate in close proximity to the Digital Gateway area, such as the residences of the Plaintiffs, necessarily would take into account the adverse impact of nearby data centers in determining the price he or she is willing to pay." And perhaps most significantly, the landowners cited "the opinion of real estate professionals" that the passage of the comprehensive-plan amendment "by itself," had already "caused Plaintiffs an *immediate, present diminution in their residential real estate values*."

Those allegations suffice to establish standing at the demurrer stage. Like the Supreme Court in *Anders Larsen*, "[w]e do not hold that a bare allegation of diminished property value, no matter the context, will suffice to establish standing." 301 Va. at 122 n.2. But "the allegation[s] of diminished property values in this case . . . by the immediate neighbors . . . are sufficient to

- 6 -

survive dismissal on the basis of lack of standing." *Id.* True, the landowners would be required to prove their factual allegations at trial. *See Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.3 (2022) ("A plaintiff can survive a demurrer with well-pleaded allegations of standing, but it cannot succeed thereafter without proof of standing."). At the demurrer stage, however, the landowners have pleaded enough facts to show standing.

> ### B. Code §§ 15.2-2204 and -2229 do not impose a listen-to-and-consider requirement on local governing bodies.

Though the landowners have cleared the standing hurdle, they stumble on the merits. To evaluate whether the trial court properly dismissed this case on demurrer, we assume the truth of the landowners' central factual allegation: that the members of the Board failed to "listen to and consider the comments made at the public hearing" before adopting the amendment. 2d Am. Compl. ¶ 95. Even so, the statutes on which they rely—Code §§ 15.2-2204 and -2229—simply do not impose a listen-to-and-consider mandate on public bodies. Matters of statutory interpretation present questions of law that we review de novo. *Welsh v. Commonwealth*, ___ Va. ___, ___ (Mar. 20, 2025).

Once adopted, a comprehensive plan "control[s] the general or approximate location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). "After the adoption of a comprehensive plan, all amendments to it shall be recommended, and approved and adopted, respectively, as required by § 15.2-2204." Code § 15.2-2229. "Code §§ 15.2-2204(A) and (B) contain certain advertising and written notice requirements applicable when, inter alia, a governing body intends to adopt a comprehensive plan, zoning ordinance, or amendment thereof." *Norfolk 102, LLC v. City of Norfolk*, 285 Va. 340, 356 (2013).

The version of Code § 15.2-2204(A) in effect in November 2022 required a governing body that proposed amending a comprehensive plan to publish "notice of intention to do so . . . once a week for two successive weeks in some newspaper published or having general

circulation in the locality."[4] The notice must identify "the place or places within the locality where copies of the proposed plans, ordinances or amendments may be examined." *Id.*[5] The notice must "specify the time and place of hearing at which persons affected may appear and present their views." *Id.*

Code § 15.2-2204 provides a limited right of action if the governing body fails to comply with the advertisement and notice requirements. "Every action contesting a decision of a locality based on a failure to advertise or give notice . . . shall be filed within 30 days of such decision with the circuit court having jurisdiction of the land affected by the decision." Code § 15.2-2204(E). "If the notice published by the Board did not meet the requirements of Code § 15.2-2204, the Board acted outside the authority granted by the General Assembly and the amendments are void *ab initio*." *Glazebrook*, 266 Va. at 554. Still, Code § 15.2-2204(B) provides that if a party has received actual notice of the hearing or participated in it, the party cannot challenge the failure "to receive the written notice required by this section." *See Norfolk 102*, 285 Va. at 356 (finding plaintiffs' claims under Code § 15.2-2204 waived because they "had actual notice and actively participated"); *Lilly v. Caroline Cnty.*, 259 Va. 291, 297 (2000) (finding notice claims waived because plaintiffs "were present and participated").

Although the landowners do not contend that the Board failed to comply with any of the notice requirements in Code § 15.2-2204, they posit that additional requirements lurk in the

---

[4] The amendments since 2022 have imposed increasingly detailed requirements for the timing of the required notice. *See* 2023 Va. Acts chs. 506, 507; 2024 Va. Acts chs. 225, 242; 2025 Va. Acts ch. 52. Code § 15.2-2204(A) now requires that "the first notice appear[] no more than 28 days before and the second notice . . . no less than five days before the date of the meeting referenced in the notice." 2025 Va. Acts ch. 52.

[5] The 2023 amendments deleted the requirement that the notice include "a descriptive summary of the proposed action." 2023 Va. Acts chs. 506, 507. *See Rebh v. Cnty. Bd. of Arlington Cnty.*, 80 Va. App. 754, 765-70 & n.4 (2024) (invalidating ordinance for failing to comply with descriptive-summary requirement), *abrogated in part on other grounds and appeal dismissed*, ___ Va. ___ (Nov. 27, 2024).

statute beyond those relating to proper notice. They argue that the requirement to conduct a public hearing implicitly requires the members of a public body to actually "listen to and consider" the comments of the citizens who testify at the public hearing. The landowners say that the members of the Board could not possibly have listened to and considered the more than 14 hours of public comment by 240 citizens because the Board voted to adopt the pre-prepared resolution as soon as the public hearing ended.

But the trial court was correct that Code § 15.2-2204 does not impose a listen-to-and-consider requirement. Such a requirement cannot be found in the text of the statute, cannot be squared with controlling precedent, and would be impractical to administer.

Start with the text of Code § 15.2-2204. The statute addresses at length the requirements to advertise a public hearing relating to a comprehensive plan, an ordinance, or amendments to a comprehensive plan or ordinance. The statute says nothing about how the governing body should conduct the public hearing, let alone that a vote by the public body is void ab initio if the public body fails to listen to and consider public comments. The absence of any such requirement is corroborated by subsection (E). As noted above, that subsection provides a limited, 30-day right to contest the governing body's "failure *to advertise or give notice* as may be required by this chapter." Code § 15.2-2204(E) (emphasis added). If the legislature had intended the statute to also impose a listen-to-and-consider mandate, it would not have written subsection E that narrowly.

Background precedent further shows why the General Assembly would have said so expressly had it intended to impose such a requirement. The Supreme Court held more than 40 years ago that "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984). "Not least among the reasons for refusing to recognize such a right is

- 9 -

the impossibility of its judicial definition and enforcement." *Id.* at 285. "Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard." *Id.* "Absent statutory restrictions, the State must be free to consult or not to consult whomever it pleases." *Id.* Given the well-established baseline that citizens "have no constitutional right to force the government to listen to their views," *id.* at 283, the General Assembly surely would have said so explicitly if it had wanted to impose a listen-to-and-consider mandate.

The landowners' theory also cannot be squared with our own recent decisions interpreting Code § 15.2-2204 in *Morgan v. Board of Supervisors*, 83 Va. App. 720 (2025) ("*Morgan II* "), and *Drewry v. Board of Supervisors*, 84 Va. App. 479 (2025). In *Morgan II*,[6] the trial court rejected the plaintiffs' claim that the governing body violated Code § 15.2-2204 by following COVID-19 rules that limited in-person attendance at the public hearing to ten people. 83 Va. App. at 738. We affirmed, rejecting the plaintiffs' argument that Code § 15.2-2204(A) created a "statutory right to 'meaningfully participate' and present their views to the Board." *Id.* at 732. We reasoned that "Code § 15.2-2204(A) does not contain the phrase 'meaningful participation.' Instead, Code § 15.2-2204(A) is *entirely focused on notice* and what is required for adequate notice such that 'persons affected may appear and present their views.'" *Id.* at 739 (emphasis added). *Morgan II* compels the same conclusion here: the right to make the governing body "listen to and consider" public comments made at the public hearing is not found in Code

---

[6] After the Supreme Court found in *Morgan I* that the landowners had standing to challenge the rezoning decision by the board of supervisors, the trial court sustained the board's demurrer. We affirmed that ruling in *Morgan II*. 83 Va. App. at 725. Although *Morgan II* was published after the briefing here was completed, we invited the parties to file supplemental briefs to discuss its application.

§ 15.2-2204(A). And that is because the statute "is entirely focused" on ensuring proper notice.[7] *Id.*

The landowners' position is also at odds with *Drewry*, which interpreted the private right of action in Code § 15.2-2204(E) to be limited to enforcing the claimant's own notice rights.[8] 84 Va. App. at 490, 492. Drewry was a member of the board of supervisors who voted against a conditional-use permit for a methane-gas-conditioning facility to be built near land on which he operated his own "agritourism business." *Id.* at 485, 490. He argued that the board's vote to approve the permit was void ab initio under Code § 15.2-2204 because the board failed to give notice to others in the manner required by the statute. *Id.* at 487. We affirmed the trial court's decision sustaining the board's demurrer. We noted that Code § 15.2-2204(B) provides that "[a] party's actual notice of, or active participation in, the proceedings . . . shall waive the right of that party to challenge the validity of the proceeding due to failure of the party to receive the written notice required by this section." *Id.* at 490 (quoting Code § 15.2-2204(B)). We explained that "Code § 15.2-2204 does not create a private right of action independent of a violation of the claimant's own notice rights." *Id.* at 492. Just as in *Drewry*, the landowners here do not seek to vindicate their own notice rights but to read into the statute a substantive right that cannot be found in the text.

---

[7] We disagree with the landowners that the entirely-focused-on-notice statement in *Morgan II* was "dicta and an impermissible advisory opinion." Appellants' Supp. Br. at 1. That statement was the "ratio decedendi" of the decision. *See, e.g.*, *Johnson v. Commonwealth*, 75 Va. App. 475, 481-82 (2022) ("The interpanel-accord doctrine 'applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment.'" (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003))). The statement explained why the rights protected by Code § 15.2-2204 were notice rights and did not include the right to meaningfully participate in the public hearing.

[8] Because *Drewry* was also decided after briefing was complete, we notified counsel to be prepared at oral argument to discuss it.

- 11 -

The landowners' novel legal theory also misconceives the nature of the legislative process, treating a legislative body as if it were a jury that must deliberate and consider only the evidence before it and nothing else.  Our courts have never imposed that restriction on legislative bodies.  Unlike jurors who are expected to approach deliberations in the jury room with an open mind and to consider only the evidence before them, legislators are allowed to come to a public hearing with a preconceived belief in the right answer.  Legislators may know facts not mentioned at the public hearing.  And they may or may not change their mind based on what they hear at the public hearing, assuming they choose to listen.  But whether they actually listen does not invalidate their legislative acts.

For "in the exercise of its legislative discretion, a legislative body is presumed to have been cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to their action." *Indus. Dev. Auth. v. La France Cleaners Laundry Corp.*, 216 Va. 277, 282 (1975).  We "uphold a legislative action if, in the face of evidence of unreasonableness, . . . 'evidence of reasonableness is sufficient to make the question fairly debatable.'" *Id.* at 281 (quoting *City of Richmond v. Randall*, 215 Va. 506, 511 (1975)).  And in evaluating *reasonableness*, we "look not to what a legislative body was told or to what it knew when it acted, but to what it could have known at that time." *Id.* at 282.  That is why courts "may consider evidence of reasonableness in the pleadings, exhibits, and admissions— even if it was not before the Board in the legislative record." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 19 (2024).  In other words, "[i]t is not our place to judge the quality of the care and deliberation that went into this or any other law." *King v. Burwell*, 576 U.S. 473, 516 (2015) (Scalia, J., dissenting).  "A law enacted by voice vote with no deliberation whatever is fully as binding upon us as one enacted after years of study, months of committee hearings, and weeks of debate." *Id.*

Finally, the landowners' legal theory lacks any limiting principle and would jeopardize legislative immunity. The landowners insist that a listen-to-and-consider mandate inheres in the very notion of a public-hearing requirement. Under that theory, however, *every* statute requiring a public hearing would impose such a requirement unless the legislature explicitly negated it.

And just as a constitutional listen-to-and-consider mandate would be impossible to define or enforce, *Knight*, 465 U.S. at 285, so would a statutory mandate. Consider just two problems. First, allowing such lawsuits would undermine "common law legislative immunity," which shields members of local governing bodies from inquiry into their legislative conduct or motives. *Bd. of Supervisors v. Davenport & Co.*, 285 Va. 580, 588-89 (2013). To be sure, local legislators cannot be compelled to testify about "matters of legislative conduct, whether or not they are testifying to defend themselves." *Id.* at 588 (quoting *Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988)). But legislators may choose to waive that protection. *Id.* at 589-90 (holding that the board of supervisors waived its legislative immunity by suing its financial advisor for fraud). If citizens could bring failure-to-listen-to-or-consider lawsuits to invalidate local ordinances, local legislators would be pressured to waive their legislative immunity to defend the integrity of their vote. That inherent pressure to testify would undermine the purpose of legislative immunity and expose lawmakers to the burdens of litigation. *See Edwards v. Vesilind*, 292 Va. 510, 527 (2016) ("[S]ubjecting legislators to '[d]iscovery procedures can prove just as intrusive' as naming legislators as parties to a lawsuit." (second alteration in original) (quoting *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418 (D.C. Cir. 1995))).

Second, consider the ramifications of accepting the landowners' theory that a prima facie failure-to-listen-to-and-consider claim is established simply by showing that a board voted on a measure immediately following a 14-hour public hearing. How could public bodies negate that inference? Would it be enough to take a recess before voting? Could board members recite in

- 13 -

the adopted motion that they really did listen to and consider public comments? Could such a recital nevertheless be challenged as untrue? The practical difficulties administering a listen-to-and-consider mandate would be endless.

For all these reasons, the landowners have not persuaded us that the General Assembly empowered citizens to invalidate governmental action through lawsuits claiming that elected officials failed to listen to or consider citizen comment at public hearings. Our democratic institutions rely on elections to oust legislators who prove inattentive to public concerns. As the Supreme Court put it in *Knight*, "[d]isagreement with public policy and disapproval of officials' responsiveness . . . is to be registered principally at the polls." 465 U.S. at 286. For "[i]t is inherent in the republican form of government that high officials may choose—in their own wisdom and at their own peril—to listen to some of their constituents and not to others." *Id.* at 300 (Stevens, J., dissenting).

CONCLUSION

In short, the landowners alleged sufficient facts to establish their standing at the demurrer stage, but they failed to state a claim that the Board violated Code §§ 15.2-2204 or -2229 by voting on the comprehensive-plan amendment without having listened to or considered public comment. So the trial court correctly sustained the Board's demurrer.

*Affirmed.*